J3-b

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9697 | **DATE** | 4/29/2002 |
| **CASE TITLE** | Lamar Chapman, III vs. Chalres Schwab & Company, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The order of the Bankruptcy Court granting summary judgment to the Defendants is AFFIRMED. The Court hereby issues a Rule to Show Cause against Lamar Chapman III to show why he should not be subject to monetary sanctions pursuant to Fed.R.Civ.P. 11. Chapman is given to June 13, 2002 to respond in writing to the Rule to Show Cause.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | number of notices | |
| | No notices required. | | | | | |
| | Notices mailed by judge's staff. | | | APR 3 0 2002 | | |
| | Notified counsel by telephone. | | | date docketed | | |
| ✓ | Docketing to mail notices. | | | | | 7 |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | | |
| | | | U.S. DISTRICT COURT | date mailed notice | | |
| WAP | courtroom deputy's initials | | 02 APR 30 AM 8:11 | | | |
| | | | Date/time received in central Clerk's Office | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

**APR 2 9 2002**

**Judge Harry D. Leinenweber**
**U.S. District Court**

LAMAR CHAPMAN III,

        Plaintiff-Appellant,

        v.

CHARLES SCHWAB & COMPANY,
INCORPORATED, a Delaware
Corporation; STEVEN MURPHY, in
his individual capacity; and
CRAIG M. LOUIE, in his
individual capacity,

        Defendants-Appellees.

Case No. 01 C 9697
Adversary No. 00 A 0358
Bankruptcy No. 00 B 5538

Hon. Harry D. Leinenweber

**DOCKETED**

APR 3 0 2002

## MEMORANDUM OPINION AND ORDER

Before the Court is a bankruptcy appeal. Plaintiff-Appellant Lamar Chapman III ("Chapman") appeals from the Bankruptcy Court's order of November 1, 2001 denying Chapman's Motion for Reconsideration of that Court's opinion of August 15, 2001 granting summary judgment on all counts of Chapman's adversary complaint in favor of the Defendants, denying Chapman's Motion to Dismiss the counterclaim of Robert and Beverly Smith (the "Smiths"), denying Chapman's Motion to Strike affidavits submitted in support of Charles Schwab and Co.'s ("Schwab") Motion for Summary Judgment, and denying Chapman's motion for turnover of funds.

## BACKGROUND

This appeal marks the latest chapter in Lamar Chapman's seemingly endless odyssey as a *pro se* litigant in the Northern District of Illinois. While the journey of Homer's Odysseus was

prolonged by forces beyond his control, Chapman's perpetual peregrinations through the state and federal courts of Illinois are propelled by his own propensity for petty crime and a penchant for pernicious and frivolous litigation. The full history of Chapman's activities as a *pro se* litigant in the Northern District of Illinois will be addressed later in this opinion. The facts pertinent to the current appeal are as follows.

Chapman opened an Asset Management Account with Schwab in March of 1999. The account was opened with an initial deposit of a $40,378.00 check signed by Chapman but naming United States Shippers, Inc. ("USSI") as the maker and Donnelly Transportation, Inc. ("Donnelly") as the payee. This check had been reported lost and neither USSI nor Donnelly had ever heard of Chapman before this litigation. In April 1999, Chapman deposited two additional checks in the Schwab account, one for $68,510.00 and the other for $9,350.00. Both checks were made by Stewart Title on behalf of the Smiths and listed as payees the IRS and Fawn Landscaping and Nursery, respectively. Again, Chapman had no authority to possess or negotiate these checks when he signed and deposited them into his Schwab account. Chapman reduced his account balance over the next several months. Schwab moved to restrict Chapman's access to the account on October 29, 1999 when the checks were returned. In November 1999, Chapman made repeated attempts to withdraw the remaining funds in the account but those requests were consistently

denied by Schwab, which had placed the remaining account funds in a "safekeeping account."

Chapman filed *pro se* a Chapter 13 bankruptcy petition on February 24, 2000. A few weeks later Chapman filed adversary complaints against Defendant Schwab for turnover of his Schwab funds under various theories, two of its employees, Steven Murphy and Craig M. Louis, and the Smiths. Schwab filed a proof of claim in Chapman's Chapter 13 case for $77,860.00 plus expenses and interest which arose from its obligation to indemnify its depository which was being sued by the drawee for the two checks Chapman deposited into his Schwab account in April 1999. Schwab moved for summary judgment against Chapman on his adversary complaint on June 15, 2001, and produced several affidavits and depositions in support of that motion. Chapman was given until July 10, 2001 to file his answer and any supporting material pursuant to Local Bankruptcy Rule 402(N). Chapman failed to answer by that date and instead requested additional time to file a response. The court granted Chapman an extension until July 16, 2001. Chapman filed no response or affidavits opposing Schwab's motion for summary judgment, but did file a motion to strike all Schwab's affidavits offered in support of its motion for summary judgment.

Although given ample time by the court to collect and present evidence on his behalf, Chapman produced absolutely no evidence to support his claims against Schwab and the Smiths or to establish that he had valid authority to possess or negotiate the checks in

question.  Instead, on July 23 "[Chapman] sought to abort the long and expensive litigation started and pursued by him here, once learning that Schwab would win summary judgment and that the Smiths' counterclaim would be tried, by dismissing his Chapter 13 bankruptcy case. . . ."  *In the Matter of Chapman*, 265 B.R. 796, 802 (2001). Prior to the hearing date on Chapman's motion to dismiss and one week after his response was due, Chapman moved for an additional two-day extension to file materials in response to Schwab's summary judgment motion.  Having instructed Chapman as far back as November 2000 regarding the type of materials he would need to file to support his contentions, the court asked Chapman if he was prepared to offer any relevant material in support of his response.  Chapman acknowledged that he had no such material and his request for additional time to respond was denied.  The court entered an order granting Schwab's motion for summary judgment on all counts.

At a hearing on August 1, 2001, Chapman's motion to dismiss his Chapter 13 petition was granted.  However, the Bankruptcy Court exercised its discretion to retain jurisdiction over the remaining issues in the adversary complaint and to complete the litigation of the Smith's counterclaim against Chapman.  On August 1, 2001, Chapman also moved for reconsideration of the court's decision to grant Schwab's motion for summary judgment.  This motion was denied and the Bankruptcy Court issued an opinion on August 15, 2001 granting Schwab summary judgment on all counts of Chapman's adversary proceeding, denying Chapman's motion for turnover of the funds held by Schwab,

- 4 -

denying his motion to strike the affidavits filed in support of Schwab's summary judgment motion, denying Chapman's motion to dismiss the Smiths' counterclaims and retaining jurisdiction for trial over the remaining Chapman claims and the Smith's counterclaim. Chapman now appeals from the Bankruptcy Court's final order of November 1, 2001 denying Chapman's motion for reconsideration of the Court's grant of summary judgment to the Schwab defendants on all counts.

## APPEAL FROM JUDGMENT OF THE BANKRUPTCY COURT

### *Standard*

District courts apply a dual standard of review when considering a bankruptcy appeal. The factual findings of the Bankruptcy Court are reviewed for clear error, while the conclusions of law are reviewed *de novo*. *In re Yonikus*, 996 F.2d 866, 868 (7th Cir. 1993); Bankruptcy Rule 8013 (West 2001). A grant of summary judgment is considered a conclusion of law and will be upheld "if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Indiana Ass'n of Homes for the Aging, Inc. v. Indiana Office of Medicaid Policy & Planning*, 60 F.3d 262, 265-66 (7th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). In reviewing the facts relied upon by the Bankruptcy Court in granting summary judgment, this Court will accept the factual determinations of the Bankruptcy Court unless those determinations are completely devoid of some reasonably credible evidentiary support. *See United States v. Greer*, 53 F.3d 334 (7th Cir. 1995).

- 5 -

## DISCUSSION

In a section of his brief entitled "Statement of Issues Presented for Review," Chapman enumerates eleven issues for review by this Court. The issues (as listed by Chapman) are:

1) Was Plaintiff's uncontested Motion for Summary Judgment and the three affidavits submitted in support thereof sufficient enough to warrant the Court granting [Chapman] summary judgment in this adversarial matter?

2) Was it reversible error for the Bankruptcy Court to refuse to hear or rule on Plaintiff's Verified Objections to Defendants' Proof of Claim? And did the Plaintiff's Verified Objections to Defendants' Proof of Claim create a material issue of fact that would preclude granting the Defendants' summary judgment on all counts []?

3) Was it reversible error for the Bankruptcy Court to refuse to rule on Plaintiff's Re-filed Motion for Turnover of Funds in excess of the amount of $47,000.00 held by Defendants and removed from Plaintiff's Asset Management Checking Account by Defendants just sixty days prior to filing of Plaintiff's Chapter 13 Petition?

4) Did the Defendants violate the automatic stay by their willful admission and by withholding money from Plaintiff's Asset Management Checking Account?

5) Did the Bankruptcy Court abuse its discretion by refusing to allow [Chapman] adequate time to fully brief his response to Defendants' voluminous Motion for Summary Judgment?

6) Was it a rush to judgment for the Bankruptcy Court to grant Defendants summary judgment on all counts[]?

7) Did the Bankruptcy Court continue to have jurisdiction over Plaintiff's adversary complaint once it made its unsupported and erroneous findings that the Plaintiff had no

interest in the money or property held in Plaintiff's Asset Management Account?

8) Did the Bankruptcy Court have subject matter jurisdiction to supersede the authority of the IRS and decide the controversy over whether or not the money held in Plaintiff's Asset Management Account belonged to Plaintiff, or non-parties who are not under the jurisdiction of the court - Donnelly Transportation, Stewart Title Company, Robert E. Smith or Beverly C. Smith in this adversary matter?

9) Was it an abuse of the Bankruptcy Court's discretion and a disparaging application or appropriation of the Court's discretion to refuse to allow [Chapman] a two-day extension of time to brief his response to Defendants' Motion for Summary Judgment considering the Court had full knowledge that the Plaintiff's college student daughter was having emergency surgery?

10) Was it fundamentally unfair and did it constitute disparaging treatment or a violation of due process for the Bankruptcy Court to refuse or fail to rule on Plaintiff's motions and at the same time rule on each and every motion made by the Defendants?

11) Any other issues that may be relevant in deciding this appeal.

### *Issues 3 and 4*

Issues 3 and 4 raise essentially the same contention, that the Bankruptcy Court erred in the way it handled the approximately $47,000.00 balance of the Schwab Asset Management Account opened in Chapman's name with the fraudulently negotiated checks. The Bankruptcy Court considered and properly rejected both of the issues Chapman raises regarding Schwab's handling of his Asset Management Checking Account. Schwab established that Chapman fraudulently converted three checks totaling $118,238.00 that did not designate

- 7 -

him as payee and for which he had absolutely no authority to possess or negotiate. Chapman deposited these checks without authorization into his Schwab account. Chapman offered absolutely no credible evidence to contradict these facts. Based on these uncontroverted facts, the Bankruptcy Court properly found that Chapman had no legal or equitable interest in the funds in the Schwab account. Since Chapman had no valid interest in the Schwab Account funds, Schwab's actions in freezing those funds were clearly not prohibited under any provision of the Bankruptcy Code.

### Issues 1, 5, 6, 9 and 10

As argued in his briefs, Chapman's main contention here is that, in dealing with a "non-attorney, non-lawyer, *pro se* plaintiff," the Bankruptcy Court violated the dictates of *Haines v. Kerner*, 303 U.S. 519 (1972) by holding Chapman to certain filing deadlines and refusing in some instances to grant extensions. The setting of briefing schedules is within the discretion of the court and is reviewed only for abuse of discretion. *Gonzalez v. Ingersoll Mill. Mach. Co.*, 133 F.3d 1025, 1030 (7th Cir. 1998).

Chapman's reliance on *Haines v. Kerner* is misplaced. *Haines* requires that the courts liberally construe the pleadings of individuals who proceed *pro se*. It does not, however, require courts to indulge every whim of a *pro se* litigant pursuing frivolous claims. *See Chapman v. Ontra, Inc.*, 1997 WL 321681, at *9 (N.D. Ill. June 6, 1997). It must also be noted that Chapman is no ordinary *pro se* litigant and hardly in need of liberal treatment by any court. As

- 8 -

will be discussed below in greater detail, Chapman has pursued a wide variety of claims as a *pro se* litigant in both federal and state court. He had represented himself in Bankruptcy Court in several Chapter 13 proceedings previous to the one at bar and, although his claims may have been frivolous, the record indicates that Chapman is a competent litigator. Chapman's problem before the Bankruptcy Court was not that the Court treated him unfairly or failed to construe his pleadings liberally. The Bankruptcy Court went out of its way over the course of eighteen months to provided Chapman with every opportunity to pursue and substantiate his claims against the Defendants. Chapman's claim that the Bankruptcy Court treated him unfairly and refused to grant extensions is disingenuous at best.

Schwab moved for summary judgment against Chapman on his adversary complaint on June 15, 2001 and produced depositions and affidavits in support of its motion. Chapman was given until July 10, 2001 to file his answer and any supporting materials pursuant to Local Bankruptcy Rule 402(N). All Chapman needed to do to support his case was to produce *any* evidence, other than self-serving conclusory affidavits, that he had valid authority to possess or negotiate the checks in question. Chapman failed to file his answer on July 10 and instead requested additional time to file his response and materials. The court granted Chapman an extension until July 16, 2001. Chapman failed to file a response or affidavits opposing summary judgment by that date. Instead, on July 23, Chapman abruptly filed a motion to dismiss his Chapter 13 case once he

understood that Schwab would likely win summary judgment and that the Smiths' counterclaims against Chapman would go to trial.

Just before the hearing date set for that motion, Chapman moved on July 23 for a two-day extension to file materials in response to Schwab's motion for summary judgment. In response to questions posed by the Bankruptcy Court, Chapman acknowledged that he was still unable at that time to offer any material at all in opposition to Schwab's motion. The Court therefore denied *that* request for extension of time and on July 24 granted Schwab's motion for summary judgment.

On August 1, Chapman moved for reconsideration of the grant of summary judgment to Schwab and again requested two days to file a response to Schwab's motion. Although Chapman had indicated on July 23 that he needed only two days to file responsive materials, on August 1 Chapman again responded to the Court's questioning by indicating that he could not point to anything whatsoever to challenge the summary judgment materials submitted by Schwab. For this reason the motion for an additional two days to file a response was again denied. Again, Chapman's problem was not that the Bankruptcy Court refused "to allow [Chapman] adequate time to fully brief his response" (Issue 5), "rushed to judgment" (Issue 6), abused its discretion by refusing the requests for two-day extensions (Issue 9) or violated due process by failing to rule on Chapman's motions (Issue 10). Chapman had every opportunity to pursue discovery and

present evidence to the court in support of his claims. He simply failed to do so.

Likewise, Chapman was not prejudiced because the court refused to rule on any of his motions but is simply displeased because the Court properly ruled against Chapman on many of his motions, including his own unsubstantiated motion for summary judgment (Issue 1). The Bankruptcy Court in no way abused its discretion in its handling of Chapman's continued refusal (or inability) to respond to Schwab's motion for summary judgment. Based on the facts before it, the Bankruptcy Court was likewise correct in denying Chapman's motion for summary judgment. Judge Schmetterer went to great lengths on November 27, 2000 to tell Chapman the kind of facts he would need to present to prevail or survive Schwab's motion for summary judgment. Chapman received every consideration. His pleadings were always carefully considered and liberally construed. The contentions raised by Chapman in Issues 1, 5, 6, 9, and 10 are without merit.

### Issues 2, 7, and 8

Chapman asserts in Issue 2 that his Verified Objections to Defendant's Proof of Claim created a material issue of fact precluding summary judgment in Defendants' favor and that the Court improperly refused to consider Chapman's objections. Beyond asserting this issue within his laundry list "Statement of Issues," the Court could find no substantive argument supporting this issue after a careful review of the briefs submitted by Chapman. Regarding the waiver of appellate issues the Seventh Circuit has famously

stated that "judges are not pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Put another way, "[a] litigant who fails to press a point by supporting it with *pertinent* authority, or by showing why it is a good point despite a lack of supporting authority or in the face of contrary authority, forfeits the point." *United States v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir. 1990). Chapman failed to advance any substantive argument on this issues. Accordingly, he has forfeited this issues on appeal and it will not be addressed.

Issue 8 challenges the Bankruptcy Court's exercise of jurisdiction over the issue of ownership of the funds in the Schwab account. Judge Schmetterer addressed this issue fully when Chapman raised it in his motion to reconsider. The Bankruptcy Court properly exercised its core jurisdiction to resolve the dispute regarding the ownership of the funds in Chapman's Schwab account. *See In re Xonics*, 813 F.2d 127, 131 (7th Cir. 1987).

Issue 7 questions the Bankruptcy Court's decision to retain jurisdiction over the remaining claims after the dismissal of Chapman's Chapter 13 proceeding and entry of summary judgment on all counts of Chapman's adversary complaint against Schwab. In the opinion of October 30, 2001, Judge Schmetterer carefully considered Chapman's argument on this issue in light of the Seventh Circuit's decision in *Matter of FedPak Systems, Inc.*, 80 F.3d 207 (7th Cir. 1996). The court properly explained that Chapman's case was distinguishable from *FedPak* because Chapman had claimed the property

to be his on his bankruptcy schedules and sued to enforce his purported rights, placing the dispute within the core jurisdiction of the Bankruptcy Court. As the Bankruptcy Court stated "Mr. Chapman has essentially argued that this Court had core jurisdiction to adjudicate his case up to the moment when the adjudication went against him, thereby denying Defendant of any judgment so that Chapman can be free to relitigate all issues in another court. The law does not permit him to achieve victory because he lost on the merits." *In the Matter of Chapman*, 269 B.R. 201, 209 (Bankr. N.D. Ill. 2001).

## SANCTIONS UNDER RULE 11

In his Reply Brief, Chapman states that there has been "grotesque conduct before this Court" and that "[i]t is apparent that Rule 11 of the Federal Rules of Civil Procedure have been knowingly violated" in this case. He is correct. Chapman made numerous representations to the Bankruptcy Court about the factual support for his claims that he never substantiated. After making what clearly appear to be knowingly false statements to that court, and causing a massive waste of judicial resources and the parties' time and money pursuing an obviously frivolous and harassing lawsuit, Chapman now comes in his briefs submitted to this Court and describes the Bankruptcy Court as "insensitive" and "arrogant" and makes completely false statements regarding the proceedings below. This should not be a surprise. In fact, Lamar Chapman has spent the past decade zealously pursuing countless frivolous law suits in the state and

- 13 -

federal courts of Illinois.[1]  Several courts in this District have
noted that Chapman is a "prolific *pro se* litigator" *Chapman v. Ontra,
Inc.*, 197 WL 321681 (N.D. Ill. June 6, 1997).  Others have commented
on the fact that many of his lawsuits have been frivolous or worse.
*See Chapman v. Currie Motors, Inc.*, 65 F.3d 78, 80 (7th Cir.
1995)(noting that there "is a strong flavor of fraud on the court").
No court, however, has yet examined the full history of Chapman's
activities as a *pro se* litigator in the Northern District of

[1] *See Matter of Chapman*, 1991 WL 168776 (Bankr. N.D. Ill. Aug. 30, 1991);
*Matter of Chapman*, 132 B.R. 132 (Bankr. N.D. Ill. Sep. 10, 1991); *In re Chapman*,
132 B.R. 153 (Bankr. N.D. Ill. Sep. 20, 1991); *Chapman v. State of Ill.*, 1992 WL
6710 (N.D. Ill. Jan. 13, 1992); *Chapman v. Citicorp Mortg., Inc.*, 1992 WL 59289
(N.D. Ill. Mar. 20, 1992); *Chapman v. Citicorp Mortg., Inc.*, 1992 WL 157499 (N.D.
Ill. Jun. 23, 1992); *In re Chapman*, 1992 WL 206246 (Bankr. N.D. Ill. Aug. 07,
1992); *Chapman v. State of Ill.*, 983 F.2d 1072, Unpublished Disposition, 1992 WL
374017 (7th Cir. Dec. 18, 1992); *In re Chapman*, 1992 WL 395931 (Bankr. N.D. Ill.
Dec. 23, 1992); *In re Chapman*, 154 B.R. 258 (Bankr. N.D. Ill. Apr. 04, 1993); *In
re Chapman*, 154 B.R. 267 (Bankr. N.D. Ill. May 04, 1993); *Chapman v. Burton Berger
& Associates, Ltd.*, 159 B.R. 812 (N.D. Ill. Sep. 16, 1993); *Bank of Homewood v.
Chapman*, 258 Ill.App.3d 732, 630 N.E.2d 891 (Ill. App. 1 Dist. 1993); *Bank of
Homewood v. Chapman*, 257 Ill.App.3d 337, 628 N.E.2d 974 (Ill.App. 1 Dist. 1993);
*Bank of Homewood v. Chapman*, 154 Ill.2d 557, 631 N.E.2d 705 (Table)(Ill. 1994);
*Chapman v. Bryan*, 156 Ill.2d 556, 638 N.E.2d 1113 (Table)(Ill. 1994); *Chapman v.
Bryan*, 513 U.S. 923, 115 S.Ct. 307 (1994); *Chapman v. Burton Berger & Associates*,
46 F.3d 1133 Unpublished Disposition, 1995 WL 21519 (7th Cir. Jan. 18, 1995);
*Chapman v. Bryan*, 514 U.S. 1048, 115 S.Ct. 1424 (1995); *Chapman v. Currie Motors,
Inc.*, 161 Ill.2d 524, 649 N.E.2d 414 (Table)(Ill. 1995); *Chapman v. Currie Motors,
Inc.*, 65 F.3d 78 (7th Cir. Aug. 31, 1995); *Chapman v. Currie Motors, Inc.*, 516 U.S.
860, 116 S.Ct. 169 (1995); *Chapman v. Burton Berger & Associates*, 516 U.S. 853, 116
S.Ct. 153 (1995); *People v. Chapman*, 163 Ill.2d 568, 657 N.E.2d 628 (Ill. 1995);
*Chapman v. Village of Matteson*, 163 Ill.2d 550, 657 N.E.2d 617 (Table)(Ill. 1995);
*People v. Chapman*, 1995 WL 755304 (N.D. Ill. Dec. 15, 1995); *Bristol Oaks, L.P. v.
Chapman*, 1996 WL 73654 (N.D. Ill. Feb. 16, 1996); *Chapman v. Illinois*, 516 U.S.
1179, 116 S.Ct. 1278 (1996); *Chapman v. Gasperec*, 1996 WL 515186 (N.D. Ill. Sep.
06, 1996); *Chapman v. State of Ill.*, 99 F.3d 1142, Unpublished Disposition, 1996
WL 590554 (7th Cir. Oct. 10, 1996); *Chapman v. Gasperec*, 1997 WL 112821 (N.D. Ill.
Mar. 07, 1997); *Chapman v. Village of Homewood*, 960 F.Supp. 127 (N.D. ILL. Mar. 17,
1997) *Chapman v. Currie Motors, Inc.*, 173 Ill.2d 522, 684 N.E.2d 1334 (Table)(Ill.
1997); *Chapman v. Ontra, Inc.*, 1997 WL 321681 (N.D. Ill. Jun. 06, 1997); *Chapman
v. Village of Homewood*, 1997 WL 361413 (N.D. Ill. Jun. 25, 1997); *Chapman v. Krop*,
1997 WL 598126 (N.D. Ill. Sep. 19, 1997); *Chapman v. Ontra, Inc.*, 1998 WL 341805
(N.D. Ill. Jun. 11, 1998); *Chapman v. Village of Matteson*, 165 F.3d 31, Unpublished
Disposition, 1998 WL 846852 (7th Cir. Nov. 25, 1998); *In re Chapman*, 265 B.R. 796
(Bankr. N.D. Ill. Aug. 15, 2001); *In re Chapman*, 269 B.R. 201 (Bankr. N.D. Ill.
Oct. 30, 2001); *Chapman v. Fisher*, 2001 WL 1414480 (N.D. Ill. Nov. 09, 2001).

Illinois. When viewed in its entirety, the record reveals a disturbing pattern of Chapman transforming his own misdeeds into lawsuits against anyone (judges, creditors, local politicians) involved in exposing his transgressions or challenging him in anyway. Indeed, this is a man who once informed a judge that he was not employed because he had to devote so much of his time to *pro se* litigation against his creditors. *See In re Chapman*, 154 B.R. 258, 267 (Bankr. N.D. Ill. 1993).

In fashioning Rule 11 sanctions, "the decision to impose such sanctions *and their form* may be influenced by consideration of a party's past misconduct." *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 710 (7th Cir. 2001)(emphasis added). The Advisory Committee's notes on Rule 11 also indicate that, in deciding what sanctions are appropriate in a particular case, a court may consider whether the conduct "was part of pattern or activity" or "whether the person has engaged in similar conduct in other litigation." *Id.* While the following account of Chapman's adventures as a *pro se* litigant may seem exceedingly long-winded, it is necessary for understanding the unusual sanction this Court now proposes to impose on Chapman.

### Chapman's Career as a Pro Se Litigator

The story of Chapman's *pro se* peregrinations through the federal courts begins in 1989. In January of that year, the Bank of Homewood filed an action in state court in an effort to recover $3,841.00 from Chapman after he deposited drafts for which there were insufficient

funds. Chapman filed counterclaims against the Bank and its officers claiming breach of contract, fraud in the inducement, and violation of the Consumer Fraud and Deceptive Business Practices Act. *See Bank of Homewood v. Chapman*, 628 N.E.2d 974, 977 (Ill. App. 1st Dist. 1993); *Bank of Homewood v. Chapman*, 630 N.E.2d 891 (Ill. App. 1st Dist. 1994). The trial court dismissed Chapman's counterclaims and entered judgment in the Bank's favor on December 28, 1989. On May 3, 1990, the trial court imposed sanctions on Chapman in the amount of $2,925.00 for "reasonable additional expenses incurred due to [Chapman's] frivolous pleadings." *Bank of Homewood v. Chapman*, 628 N.E.2d at 977.

Illustrating what was to become a consistent pattern of behavior when creditors get close to collecting on judgments, Chapman filed for Chapter 13 protection on September 7, 1990 to prevent the Bank of Homewood from proceeding with its collections action against him. This bankruptcy was dismissed for failure to comply with court orders and failure to post a supersedeas bond. *Id.* at 977.

Unable to stop the Bank of Homewood with his machinations to this point, Chapman then, on May 15, 1991, filed an original action in the Circuit Court of Cook County against the Bank of Homewood, its counsel William Bryan and its president William Addy, seeking injunctive relief and damages. *Id.* Chapman went personally to Mr. Bryan's house to serve notice. This led to the police being called and a restraining order being entered to prevent Chapman from going near Mr. Bryan. *Id.* On May 17, 1991, Assistant State's Attorney

John Coyne filed a petition for a rule to show cause as to why Chapman should not be held in contempt of court for making false statements during court proceedings. *Id.* This arose from Chapman causing a *subpoena duces tecum* to be served on the Bank of Homewood in an effort to obtain Judge and Mrs. Robert Krop's bank records (Judge Krop was the judge in the original state court proceeding who ordered judgment in the Bank's favor). At a hearing, Chapman stated that the records would show that Judge Krop and Mr. Bryan, the Bank's counsel, were guilty of misconduct and conspiring against him. Not only was the judge not convinced by Chapman's argument, the court held Chapman in criminal contempt of court for filing a document with the court attacking a judge for a malicious purpose and without a reasonable basis in fact. *Id.* at 978. Chapman was sentenced to seven days in Cook County Jail and fined $500.00. The court entered an additional order for monetary sanctions against Chapman on January 31, 1992 for filing frivolous pleadings in his action against the Bank. *Id.*

With things clearly not going his way in state court and seeing (or at least alleging) conspiracies all around him, Chapman decided to federalize his claims and filed a *pro se* action in the Northern District of Illinois alleging violations of 42 U.S.C. §§ 1981, 1983, 1985, 1988 and 2000(a). Chapman's complaint named eleven defendants including the State of Illinois, three judges of the Circuit Court of Cook County, the Bank of Homewood, two of the Bank's attorneys, Assistant State's Attorney John Coyne, and Chapman's former employer

Currie Motors. Chapman essentially alleged that, in connection with the state court proceedings arising from Chapman overdrawing his checking account, all of these parties conspired together to harass Chapman and deprive him of his civil rights.

In an opinion by then District Judge Rovner, Chapman's IFP petition was denied and his complaint was characterized as "straining credulity beyond the breaking point" and "an improper attempt to federalize his appeal" from state court proceedings. *Chapman v. State of Illinois, et al.*, 1992 WL 6710, at *3 (N.D. Ill. Jan. 13, 1992). The complaint was dismissed as "frivolous within the meaning of 1915(d)." *Id.* Unfortunately, this was just the beginning of Chapman's prolific *pro se* litigation arising out of the judgment entered against him in the Circuit Court of Cook County for overdrawing his checking account in 1989.

In 1995, Chapman filed a petition in the Northern District of Illinois seeking removal pursuant to 28 U.S.C. § 1443 of his long-terminated 1991 criminal contempt proceeding. In keeping with an emerging pattern, Chapman made no specific allegations that his federal rights had been violated but made only generalized, conclusory claims that he was treated unfairly by the courts. Clearly not meeting the requirements for a § 1443 proceeding, Judge Anderson remanded the matter to state court. *See People v. Chapman*, 1995 WL 755304 (N.D. Ill. Dec. 15, 1995). Even after five years of frivolous counterclaims and lawsuits, fines and imprisonment, Chapman continued to pursue this matter with zeal.

In March 1994, Chapman took his cause to the streets. Chapman began distributing "informational election flyers" throughout the Village of Homewood urging voters not to vote for Judge Krop. The flyers apparently repeated the same baseless allegations for which Chapman had been held in criminal contempt. The flyers also alleged that Judge Krop had improperly imposed sanctions against Chapman. *See Chapman v. Village of Homewood*, 960 F.Supp. 127, 129 (N.D. Ill. 1997).

This activity lead to a confrontation between Chapman and Judge Krop's wife when she discovered him placing the flyers on the cars at a local Jewel supermarket. Mrs. Krop apparently followed Chapman to another location where she began removing the flyers from the cars. Chapman dialed 911 and summoned the police who, pursuant to a village ordinance prohibiting the distribution of such flyers without a permit, ordered Chapman to cease until he had such a permit.

Based on these events, Chapman, not surprisingly, filed two separate lawsuits in federal court. *Chapman v. Village of Homewood* (96 C 5297) and *Chapman v. Gasperec, et al.* (96 C 5299). In an action founded on 42 U.S.C. § 1983, Chapman alleged a conspiracy between Mrs. Krop and the Village of Homewood Police Department to deprive Chapman of his First Amendment rights and his right to equal protection. The two cases were consolidated. *See Chapman v. Village of Homewood*, 1997 WL 361413, at *3 (N.D. Ill. June 25, 1997). *See also, Chapman v. Gasperec*, 1996 WL 515186 (N.D. Ill. Sept. 6, 1996); *Chapman v. Gasperec*, 1997 WL 112821 (N.D. Ill. March 6,

1997)(describing Chapman's proclivity to use pejorative terms when describing conduct by the defendants and their counsel but denying sanctions at that time). The consolidated cases proceeded to summary judgment, at which time the Court found Chapman's allegations of a conspiracy between Mrs. Krop and the Homewood Police Department to be entirely without merit. *Chapman v. Krop*, 1997 WL 598126 (N.D. Ill. Sept. 19, 1997).

While this marked the end of the litigation of events arising out the bank overdraft in 1989, it represents only the tip of the litigation iceberg unleashed by Chapman during the nineties. The years 1995 though 1997 were especially busy years for Chapman, marked by continued abuse of the federal courts through improper federalizing of disputes properly adjudicated in Illinois courts, and an increasingly sophisticated use of frivolous *pro se* litigation as a weapon against hapless politicians, judges, and his many creditors.

In 1995, Chapman and two others sought nomination for the position of trustee of the Village of Matteson. Chapman filed objections to the others' nominating petitions. The village elections board determined that the petitions were valid, and this decision was affirmed by the Illinois Circuit and Appellate Courts. *See Chapman v. Village of Matteson*, No. 1-95-0858 (Il. App. Ct. 1998).

Staying true to form and not willing to let the matter end there, Chapman again saw conspiracy all around him and filed suit in federal court alleging a conspiracy to violate his civil rights in

- 20 -

violation of 42 U.S.C. §§ 1983 and 1985.  The case was dismissed and attorney fees in the amount of $2,500.00 were awarded to the defendants.  Chapman appealed this award as an abuse of discretion raising a favorite recurring argument that fees should not have been imposed against a *pro se* plaintiff proceeding *in forma pauperis*.  As in his briefs filed in the current bankruptcy appeal, Chapman did not argue that his suit was meritorious, only that *pro se* plaintiffs generally should be treated with unbounded deference by the courts.  The Seventh Circuit affirmed the district court's decision that Chapman's suit was frivolous.  *Chapman v. Village of Matteson*, 165 F.3d 31, 1998 WL 846852, at *2 (7th Cir. Nov. 25, 1998).

Also in this period, Chapman again tried to federalize improperly a state court action in *Bristol Oaks v. Chapman*, 1996 WL 73654 (N.D. Ill. Feb. 16, 1996).  This case began as a simple mortgage foreclosure action brought against Chapman under Illinois law.  Nothing stays simple for long when Chapman sets his sights on his creditors.  Chapman removed the case to federal court based on a defective notice of removal, with no diversity, and no federal question raised in the complaint.  After causing an unnecessary waste of judicial resources, the case was remanded to state court.  *Id.*

*Chapman v. Ontra, Inc.*, 1997 WL 321681 (N.D. Ill. June 6, 1997)(Grady, J.) involves yet another case of Chapman using frivolous suits filed in the Northern District of Illinois as a weapon against his unwitting creditors.  In 1995, Ontra sent Chapman a number of debt collection letters concerning his alleged default on yet another

home mortgage. Ontra sent a number of additional letters seeking to resolve the matter amicably. Chapman responded by filing a suit against Ontra alleging violation of the Fair Debt Collection Practices Act, RICO, the Illinois Consumer Fraud Act, state law claims of negligence, negligent infliction of emotional distress, and violations of *fifty* unfair business practices statutes. *Id.* at *1. The district court dismissed all of Chapman's claims in a detailed and carefully reasoned opinion. Judge Grady then went on to examine at length the Supreme Court's holding in *Haines v. Kerner* and the implications of that case's dictate that *pro se* litigants be held to less stringent pleadings standards. *Id.* at *9. In his opinion, Judge Grady instructs Chapman that *Haines v. Kerner* does not mean that courts are obliged to "sustain pleadings when there is simply no way of casting it to state a possible claim." *Id.* The court also clearly put Chapman on notice that sanctions *and injunctions* can be imposed against "prolific frivolous *pro se* litigants" under FED.R.CIV.P. 11. *Id.* Judge Grady further instructed Chapman to read Rule 11 and warned Chapman that, if he filed a Second Amended Complaint containing the same or similar frivolous and harassing claims, he would be called upon to show cause why he should not be subjected to fines, an injunction or both. *Id.* Chapman did file an amended complaint. One year later he moved for voluntary dismissal pursuant to FED.R.CIV.P. 41. The Court noted that the Second Amended Complaint had not corrected the deficiencies of the first. Concluding the suit was completely without merit, the court granted

Chapman's motion for voluntary dismissal. *See Chapman v. Ontra*, 1998 WL 341805 (N.D. Ill. June 11, 1998).

This pattern of behavior standing alone, coupled with Chapman's filings in the current case, would be sufficient justification for imposing Rule 11 sanctions at this time. However, the above represents only one part of the Chapman saga. It is necessary to also examine Chapman's extensive experience as a *pro se* litigator in Bankruptcy Court to properly understand why this Court feels Rule 11 sanctions are warranted at this time.

*        *        *

In the past twelve years, Chapman has been before Judge Schmetterer of the Bankruptcy Court for the Northern District of Illinois on four separate Chapter 13 proceedings: 90 B 14910, 92 B 14358, 92 B 14548, 00 B 5538. Stating this simple fact does nothing, however, to convey the incredible costs exacted from the courts and his creditors by Chapman's prolific use of frivolous and harassing *pro se* pleadings in the Bankruptcy Court.

Chapman's first *pro se* foray into Bankruptcy Court was initiated when Citicorp of Illinois foreclosed on Chapman's home mortgage. Citicorp filed a foreclosure action in state court in 1987 and obtained a judgment against Chapman. In the state court action, Chapman filed counterclaims against Citicorp alleging, *inter alia*, fraud in the inducement, civil fraud, unfair competition, violation of RICO, and raising the affirmative defense of "unclean hands." Having no success in state court and on the day the Sheriff's sale

- 23 -

was to take place, Chapman filed for Chapter 13 protection.  Citicorp
then filed a secured claim in the Bankruptcy Court based on the state
court judgment.  Chapman responded with essentially all of the same
counterclaims he had raised against Citicorp unsuccessfully in state
court. *See In the Matter of Chapman*, 132 B.R. 132, 138 (Bankr. N.D.
Ill. 1991).

Citicorp moved for summary judgment claiming that Chapman's
counterclaims were precluded under the doctrine of *res judicata*.  As
other courts had so many times before, the Bankruptcy Court found
that Chapman was improperly attempting to federalize issues already
adjudicated in state court and found his claims to be frivolous.
Citicorp's foreclosure action was remanded to the Circuit Court of
Cook County.  In remanding the case, the court noted that it was
"wholly inappropriate for [Chapman] to seek retrial of defensive
issues fully litigated in state court, and wholly appropriate for
this Court to take steps to avoid the abuse of bankruptcy." *In re
Chapman*, 132 B.R. 153, 159 (Bankr. N.D. Ill. 1991). *See also Chapman
v. Citicorp Mortgage, Inc.*, 1992 WL 59289 (N.D. Ill. March 20, 1992);
*Chapman v. Citicorp Mortgage, Inc.*, 1992 WL 157499 (N.D. Ill. June
20, 1992)(affirming the decision of the Bankruptcy Court and
informing Chapman that his status as a *pro se* litigant did not excuse
his repeated failures to meet court ordered deadlines, noting that
Chapman had been granted numerous extensions and often filed late
without leave of court or explanation).

Faced with this setback, Chapman fell back on one of his trademark strategies: attack the integrity of the judge. Chapman filed a "Petition for Change of Venue" which in substance was a motion for disqualification and recusal of Judge Schmetterer. *See In re Chapman*, 1992 WL 206246 (Bankr. N.D. Ill. Aug. 7, 1992). This wholly frivolous motion was based on Chapman's belief that he had been "over-exposed" to the court. Judge Schmetterer responded to this motion, as he has with every frivolous motion Chapman has filed in the Bankruptcy Court over the past twelve years, with a detailed and well-reasoned opinion dismissing the petition as without merit. In December 1992 Chapman was again before Judge Schmetterer seeking return of a cash bond. This motion was also dismissed as "totally without merit." *In re Chapman*, 1992 WL 395931 (Bankr. N.D. Ill. Dec. 23, 1992).

Chapman came before Judge Schmetterer on a new Chapter 13 petition in the Spring of 1993. Burton Berger and Associates filed a proof of claim with the Bankruptcy Court based on a judgment entered in state court by Judge James Gregory Smith on June 26, 1992. This judgment was based on a sanction previously imposed on Chapman for the following conduct. Chapman had received default judgment on a claim for back wages against his former employer, Currie Motors. Burton Berger and Associates had been Currie Motors' counsel at the time. This default judgment was vacated when Judge Smith learned that Chapman had committed a fraud on the court to obtain the default

judgment. The judge imposed $20,350.00 in sanctions against Chapman. *See In re Chapman*, 154 B.R. 258, 261 (Bankr. N.D. Ill. 1993).

Staying true to form, Chapman responded to Burton Berger's proof of claim by filing an adversary claim accusing Judge Smith and Burton Berger of conspiring to deprive him of his civil rights in violation of 42 U.S.C. § 1983. Judge Schmetterer dismissed Chapman's claims in the well-reasoned opinion cited above. Judge Schmetterer went on in the opinion to warn Chapman of the possibility of imposition of sanctions pursuant to FED.R.CIV.P. 11. The court stated: "Even if Chapman, as a chronic *pro se* litigant, failed to see that his complaint was frivolous though his own research, he received a crystal clear warning from his earlier litigation. . . . [t]his complaint was clearly filed in bad faith for the purpose of harassing the defendants and increasing the cost of litigating against Mr. Chapman." *Id.* at 266. *See also In re Chapman*, 154 B.R. 267 (Bankr. N.D. Ill. 1993); *Chapman v. Burton Berger & Assoc., Ltd.*, 159 B.R. 812 (Bankr. N.D. Ill. 1993).

Chapman appealed this dismissal up to the Seventh Circuit Court of Appeals. Writing for the court, then Chief Judge Posner stated that "[t]his is one of the all too frequent cases in which a person who does not have the benefit of legal counsel wastes the time of several courts for several years . . . with legally frivolous, and mostly incomprehensible, filings. And worse: *there is a strong flavor of fraud on the court (possibly of bankruptcy fraud as well)* in Chapman's representations that he had a final state court judgment

in his favor, when in fact that judgment was a judgment dismissing his frivolous garnishment proceeding." *Chapman v. Currie Motors, Inc.*, 65 F.3d 78, 80 (7th Cir. 1995)(emphasis added). *See also Chapman v. Burton Berger & Assoc.*, 46 F.3d 1133, 1995 WL 21519 (7th Cir. Jan. 18, 1995).

This brings us to Chapman's current bankruptcy proceeding (00 B 5538), filed when Schwab attempted to collect money from Chapman after he signed and deposited checks, checks he had no authority to posses or negotiate, into his Schwab account. Despite a decade of dealing with the minutia of Chapman's byzantine bankruptcy machinations, all of Judge Schmetterer's opinions in this case were detailed, well-reasoned, and explored fully the merits of each and every issue Chapman raised. Moreover, a review of the transcripts from the proceedings of the Bankruptcy Court clearly indicate that Judge Schmetterer always treated Chapman respectfully, and that he gave Chapman every opportunity to present *any* shred of evidence to support his utterly baseless adversary claims against the defendants. How does Chapman respond? He filed the present bankruptcy appeal falsely accusing Judge Schmetterer of not ruling on his motions and stating falsely that the request for a two-day extension which the court denied was the first such request Chapman had made. Chapman describes Judge Schmetterer as "insensitive" and "arrogant." Chapman also states falsely that the defendants had no evidence that the funds in the Schwab account did not belong to him, when in fact they had ample evidence supporting this fact.

### *Sanctions Available Under Rule 11*

Although sanctions pursuant to Rule 11 are generally imposed upon motion by a party, a court may consider imposing such sanctions *sua sponte.* Rule 11(c)(1)(B) states that "[o]n it its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto." *Pro se* status does not give Chapman "an unfettered license to wage an endless campaign of harassment . . . or to abuse the judicial process." *Pfeifer v. Valukas,* 117 F.R.D. 420, 423 (N.D. Ill. 1987). Neither does it relieve Chapman from his duty to conduct the inquiries required by Rule 11. *See Hilgeford v. Peoples Bank*, 776 F.2d 176 (7th Cir. 1985)(upholding Rule 11 sanctions against a *pro se* litigant). While Rule 11 requires courts to apply the least severe sanction adequate to serve the purpose of the penalty, it is also recognized that significant penalties may be imposed under Rule 11(c)(1)(B) if warranted for effective deterrence of such conduct in the future. *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 711 (7th Cir. 2001).

It is the Court's opinion that the appropriate sanction in this case would ultimately be to enter a narrowly-tailored injunction prohibiting Chapman from filing any further actions arising out of the events complained of in the current litigation, or from filing any new action or proceeding in any court of the Northern District of

Illinois without first appearing before a United States Magistrate Judge, providing the Magistrate with a copy of this opinion, disclosing the existence of the injunctive order against him, and receiving certification from the Magistrate that the claim or claims he asserts are not frivolous, and that the suit is not brought for any improper purpose. Only after receiving such certification would Chapman be permitted to file his action with the Clerk's Office under the proposed injunction.

Although rarely invoked, injunctions have been upheld as an appropriate sanction imposed under Rule 11 against prolific *pro se* litigators and attorneys who have burdened courts with frivolous and harassing suits. *See Sassower v. American Bar Association,* 33 F.3d 733, 736 (7th Cir. 1994) (having issued an order requiring Sassower to show cause why he should not be subjected to an injunction against filing suits in the Seventh Circuit, the Court of Appeals decided that an injunction entered in the Southern District of New York made another injunction unnecessary, but instead placed several restrictions in place mirroring the terms of other injunctions and severely limiting Sassower's ability to litigate in the Seventh Circuit); *Perry v. Pogemiller,* 16 F.3d 138, 140 (7th Cir. 1993) (noting that *pro se* litigants may be subjected to regulatory injunctions if warranted by a pattern of frivolous and harassing lawsuits); *Miller v. United States,* 868 F.2d 236, 124 (7th Cir. 1988) (affirming a district court's injunction limiting persistent *pro se* litigant's access to the federal courts, noting that a previous

monetary sanction did not deter the party from further frivolous filings). However, because such an injunction is an extraordinary sanction, the Court does not propose, and will not require, Chapman to show cause why one should not be entered at this time. Instead, the question of a future regulatory injunction will be submitted to the Executive Committee of the Northern District of Illinois for further consideration.

Before imposing any sanction, Rule 11 does require that the potentially offending party be given a "full and fair opportunity to respond and show cause before sanctions are imposed." *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1025 (7th Cir. 1999). When a court is acting on its own initiative under Rule 11(c)(1)(B), this means that the court must issue a show cause order to provide the party with notice and an opportunity to respond. *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 710 (7th Cir. 2001). As the Seventh Circuit has noted, "[l]itigation is not a free good, and its costs are not limited to those who initiate it. They are borne not only by the plaintiff but by the defendant, by the taxpayer, and by the parties to other lawsuits in the same court, whose cases may be delayed or who may receive less attention from the judges than if the caseload were lighter." *Lumbert v. Illinois Dept. of Corrections*, 827 F.2d 257, 259 (7th Cir. 1987)(Posner, J.). The costs exacted in the Bankruptcy and District Courts of the Northern District of Illinois by Chapman's established pattern of frivolous and harassing litigation continue to mount with no end in sight. Enough is enough.

- 30 -

Mr. Chapman is hereby notified pursuant to FED.R.CIV.P. 11(c) that this Court believes, based on the signed filings submitted in this case and for the reasons stated above, that he has violated FED.R.CIV.P. 11(b). Mr. Chapman is given 45 days to respond in writing and is ordered to show cause why, based upon the facts recited above, he has not violated subdivision (b) of Rule 11 with respect to his conduct in this case and why this Court should not consider imposing monetary sanctions on Chapman at this time. As stated above, the issue of whether or not Chapman should also be subjected to an injunction regulating his future filings in this District will not be decided by the Court at this time but will be submitted to the Executive Committee for further consideration.

## CONCLUSION

For the reasons set forth above, the order of the Bankruptcy Court granting summary judgment to the Defendants is AFFIRMED. The Court hereby issues a Rule to Show Cause against Lamar Chapman III to show why he should not be subject to monetary sanctions pursuant to FED.R.CIV.P. 11. Chapman is given 45 days to respond in writing to the Rule to Show Cause.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: _April 29, 2002_